Schiff Hardin LLP
Andrew M. Minear, No. 27817
666 Fifth Avenue, Suite 1700
New York, NY 10103
Telephone:     212.745.9538
Facsimile:     212.753.5044
Email:         aminear@schiffhardin.com

and

Matthew F. Prewitt (pro hac pending)
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
Telephone:     312.258.5500
Facsimile:     312.258.5600
Email:         mprewitt@schiffhardin.com

*Attorneys for Creditors Bunnett & Co., Inc. and
Energy Feeds International, LLC*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO

| | |
|---|---|
| FRANK MIRANDA DORES and MARY ANNE SOUZA DORES, <br><br> Debtors. | Case No. 16-10169-B-13 <br><br> Chapter 13 <br><br> D.C. No. AMM-1 <br><br> Date: February 11, 2016 <br> Time: 1:30 p.m. <br> Place:  Dept. B, Ctrm. 12, 5th Floor <br>              United States Courthouse <br>              2500 Tulare St., Fresno, California <br> Judge: Hon. René Lastreto |

**EMERGENCY MOTION OF BUNNETT & CO., INC. AND
ENERGY FEEDS INTERNATIONAL, LLC FOR AN ORDER
HOLDING THAT THE AUTOMATIC STAY DOES NOT
APPLY TO ITS INJUNCTION LITIGATION OR, IN THE
ALTERNATIVE, LIFTING THE AUTOMATIC STAY**

Creditors Bunnett & Co., Inc. ("Bunnett") and Energy Feeds International, LLC ("EFI,"

and collectively, the "Bunnett Parties"), by and through their undersigned counsel, respectfully

move (this "Motion") on an emergency basis for an order holding that the automatic stay does not

1  apply to the proceedings (the "Injunction Proceedings") in the United States District Court for the

2  Western District of Texas (the "District Court") brought by the Bunnett Parties to obtain a

3  preliminary injunction against debtor Frank Miranda Dores ("Dores"), or, in the alternative,

4  lifting the automatic stay for the limited purpose of allowing the Bunnett Parties to proceed with

5  the Injunction Proceedings.[1]  The Bunnett Parties also respectfully request that this Court order

6  Dores to produce all documents and communications concerning his business and commercial

7  activities since his resignation from employment with the Bunnett Parties, as well as sit for a

8  deposition regarding the same. Such relief is necessary given Dores' apparently fraudulent

9  conduct and his potentially ongoing tortious misconduct.  This expedited discovery will not

10  prejudice Dores as this is the same discovery that the Bunnett Parties would eventually obtain in

11  this proceeding regardless.  In support thereof, the Bunnett Parties state as follows:

## INTRODUCTION

13  　　　As of the filing of the bankruptcy petition on January 22, 2015, Debtor Dores was subject

14  to a Temporary Restraining Order entered by the United States District Court for the Western

15  District of Texas (the "District Court") to prevent Dores from continuing to unfairly compete

16  against the Bunnett Parties and misappropriating the Bunnett Parties' confidential information

17  and trade secrets. Dores was scheduled to appear at a deposition on January 26, 2016, prior to a

18  hearing on the Bunnett Parties' motion for a preliminary injunction scheduled in the District

19  Court in Texas on February 1, 2016—the date on which the Temporary Restraining Order was

20  scheduled to expire.

21  　　　The automatic stay does not stay actions to enjoin debtors from committing ongoing torts,

22  such as Dores is committing here. This District Court entered an agreed Temporary Restraining

23  Order enjoining Dores from continuing to misuse the Bunnett Parties' intellectual property. The

24  automatic stay does not operate to deprive the District Court of power to ensure compliance with

25  its own Temporary Restraining Order. The relief the Bunnett Parties seek is necessary to ensure

26

27  [1] While the Bunnett Parties have asserted claims for monetary damages in the District Court litigation, the Bunnett Parties are not requesting relief from the automatic stay to pursue monetary damages at this time, but merely seek an order that will allow a preliminary injunction to be

28  entered and enforced against Dores as necessary.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO

- 2 -

compliance with the Temporary Restraining Order and to ensure that future tortious conduct does not occur since that Order expired by its terms on February 1, 2016.

The Temporary Restraining Order was entered after an evidentiary hearing. At the end of the evidentiary hearing, Dores, through his counsel, capitulated and consented to entry of the Temporary Restraining Order, given the overwhelming evidence against him and the District Court's repeated admonitions about Mr. Dores' apparent perjury.

Indeed, the District Court noted on the record that the documents before it raised serious concerns regarding perjury and suggested that Dores was attempting to commit a fraud upon the Court:

> THE COURT: Well, I got to say, you know, I'm sitting up here keeping my mouth shut for a while, but you made representations to the Court on behalf of your client, Mr. Richie, and Mr. Dores, more importantly, has made sworn testimony to this Court that is looking very much like perjury.
>
> I'm looking at his affidavit where he says, "I am not involved in any business competing with the Plaintiffs. I have not worked since I left working for the Plaintiffs. I'm presently unemployed. I did not keep any documents of the company."
>
> These are sworn statements directly relevant to this case. They look like perjury to me. And I don't mean to select mistakes or oopses or false statements. They look like perjury.
>
> This is the same man who says he can't be here because it would be life-threatening to be here today. I'm seeing e-mails and testimony that is directly inconsistent with sworn testimony to me and to the Court about what he's doing.
>
> And I told you yesterday I was skeptical of his claims, and now I'm beyond skeptical. This man's trying to commit a fraud on the Court.
>
> MR. RICHIE: If I may respond, Judge.
>
> THE COURT: And I think you need to be very careful in what you're representing to the Court here about Mr. Dores. I understand he thinks he has the right to do what he's doing, and that's not what I'm talking about. I'm talking about what he has said factually, and I'm not happy.
>
> MR. RICHIE: He'll have to answer that for himself, Judge. All I can tell you, is that what you're getting from Mr. Golden is a story that is not accurate. For example, that Natural –

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO

- 3 -

THE COURT: I'm not talking about anything Mr. Golden has said. I'm talking about e-mails Mr. Dores has authored, after he left his employment with Bunnett & Co. and EFI, clearly soliciting business and doing work in this same feed business, and he has sworn under oath that he is not doing that.

[…]

THE COURT: If that's the way he is going to interpret his activities that I'm seeing here, or if that's the way you are going to argue them, again, you are on very thin ice.

(*See* Transcript of January 13, 2016 Hearing, attached hereto as Exhibit A, at 111:18-114:9.) Dores' counsel was warned repeatedly by the District Court that argument based on false testimony and providing perjured testimony to the District Court would not be tolerated. Defendant presented sworn testimony that he was incapable of working following the termination of his employment relationship with the Bunnett Parties. And yet the District Court saw evidence that Dores hired counsel and engaged in substantive negotiations with Natural Soda, LLC (one of the Bunnett Parties' chief suppliers). (*See, e.g.*, Dores E-mail Correspondence, attached hereto as Exhibit B; *see generally*, Ex. A, Transcript of January 13, 2016 Hearing.) Plainly a man who is not fit to work does not hire counsel to negotiate a sales agent agreement.

This same fraud is now proceeding in this bankruptcy petition. Dores has submitted to this Court the very same affidavit that he submitted in the District Court, making the very same assertions about disability and being unable to work that the District Court described as perjury and a fraud on the court.

In Dores' bankruptcy petition, his attached affidavit claims that he is "currently not able to work due to psychological symptoms caused by the stress from my last job." (16-BK-10169, Dkt. No. 1, attached Declaration of Frank Dores at ¶ 3.) Similarly in his affidavit accompanying the Motion for Contempt, Dores states that he is "not involved in any business competing with Bunnett and have not since my employment with Bunnett ended. Since I sought disability in October 2015, I have not been employed nor have I sold any products similar to that of Bunnett." (16-BK-10169, Dkt. No. 11, attached Declaration of Frank Dores at ¶ 15.) Likewise, the Motion for Contempt itself states that Dores "has been unable to work and has been on disability since

1 October 2015," (16-BK-10169, Dkt. No. 7, at 3.)

2        The Bunnett Parties believe that the Debtors' bankruptcy filing is but the latest example of

3 the extraordinary lengths Dores has gone to obstruct any inquiry into his compliance with the

4 terms of the Bunnett Parties' Temporary Restraining Orders and to prevent the Bunnett Parties

5 from obtaining any discovery to determine the extent to which additional relief may be necessary

6 to protect the Bunnett Parties from Dores' wrongful acts. Dores repeatedly has refused to appear

7 for his deposition, has refused to comply with written discovery, and has refused to provide any

8 assurances at all that he has complied with the orders to preserve evidence included in both the

9 Temporary Restraining Order and a prior restraining order.

10        Under well-established precedent, proceedings to obtain and enforce injunctions to

11 prevent a debtor's tortious behavior are exempt from the automatic stay. Accordingly, the

12 Bunnett Parties respectfully request that the Court enter an order clarifying that the automatic stay

13 does not apply to the Bunnett Parties' efforts to obtain and enforce an injunction against Dores.

14 Alternatively, the Bunnett Parties respectfully request that the Court lift the automatic stay so that

15 it may proceed with the preliminary injunction proceeding and halt Dores' fraudulent, damaging

16 conduct before it mortally wounds the Bunnett Parties' business.

17 **FACTUAL BACKGROUND**

18        The Bunnett Parties are two affiliated, family-owned companies founded by William

19 Bunnett. Mr. Bunnett is a Texas resident with fifty years of experience in the feed industry.

20 Plaintiffs source and then distribute various nutritional supplements to dairy cow feed

21 manufacturers across Texas and the western region of the United States, as well as portions of the

22 Midwest and eastern United States.

23        Dores was employed by EFI as its General Manager from January 2012 until he abruptly

24 resigned in October 2015. Dores was likewise employed by Bunnett as its General Manager at the

25 time of his resignation in October 2015. Dores previously served as EFI's Marketing Manager

26 from approximately November 2008 until December 2011.

27        The Bunnett Parties' action arises from Dores' wrongful conduct prior to and after leaving

28 employment with the Bunnett Parties, including his misappropriation of the Bunnett Parties'

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO

confidential information and trade secrets, as well as Dores' use of that information to compete unfairly and to injure the Bunnett Parties' business in violation of his fiduciary duty of loyalty to Plaintiffs and the Texas Uniform Trade Secrets Act.

Dores abruptly resigned from employment as the Bunnett Parties' General Manager in October 2015, claiming that he was suffering from emotional distress which made him unable to continue to perform his duties. The Bunnett Parties' subsequent investigation, however, revealed that Dores has in fact begun competing with the Bunnett Parties, even though he is supposedly too sick to work. Dores further attempted to conceal his misconduct by deleting files from his company laptop computer, installing new software to hide his activities, and removing the entire contents of his company iPad. Evidence of these activities is presented in the Affidavit of David Kalat and attached Forensic Analysis, filed in the District Court and attached hereto as Exhibit C.

Dores' deceitful conduct, his willful and malicious disregard of his fiduciary duty of loyalty, and his misappropriation of the Bunnett Parties' trade secrets, have caused and will continue to cause irreparable harm to the Bunnett Parties' business. Dores occupied a position of great trust and confidence; as General Manager, Dores had access to and assisted the Bunnett Parties in developing and maintaining extensive confidential business information regarding inventory and supply chain management, pricing and product development, and customer relationships. The information Dores misappropriated includes critical competitive information. As General Manager, Dores was responsible for overseeing purchasing, shipping, warehouse inventory, and customer pricing and deliveries. Put simply, Dores knows how much product the Bunnett Parties have available to sell and deliver, the price the Bunnett Parties paid for that product, and the speed at which the Bunnett Parties replenish that supply. Such information is of great competitive value to other competing cow feed distributors. Armed with this information, Dores knows the prices, quantities, and delivery dates the Bunnett Parties can offer their customers.

Dores has denied under oath in written interrogatory responses and a declaration to this Court that he has any of this information belonging to the Bunnett Parties. Documents admitted into evidence at the temporary restraining order hearing (documents produced in discovery by

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO

1    Dores) conclusively show the opposite. Dores has further denied under oath that he has attempted

2    to compete with the Bunnett Parties using the information he gained from the Bunnett Parties.

3    Documents admitted into evidence at the temporary restraining order hearing (documents

4    produced in discovery by Dores) show Dores individually and through his counsel reaching out to

5    suppliers of the Bunnett Parties in an effort to compete with the Bunnett Parties. (*See, e.g.*, Ex. B,

6    Dores E-mail Correspondence; *see generally*, Ex. A, Transcript of January 13, 2016 Hearing.)

7        Accordingly, the Bunnett Parties have sought injunctive relief to remedy Dores' wrongful

8    acts and prevent further harm to the Bunnett Parties.

9        **PROCEDURAL HISTORY**

10        The Bunnett Parties commenced suit and obtained a Temporary Restraining Order in

11    Travis County District Court on November 24, 2015, seeking relief for the Dores'

12    misappropriation of trade secrets and unfair competition. The Texas state court found that the

13    temporary restraining order was necessary to prevent irreparable harm to the Bunnett Parties, in

14    part, because Dores' "probable violations of law will imminently and irreparably jeopardize [the

15    Bunnett Parties'] confidential information, and [the Bunnett Parties'] relationships with its

16    customers and suppliers…" A copy of the Texas state court's original temporary restraining

17    order is attached hereto as Exhibit D. The temporary restraining order was set to expire on

18    December 8, 2015 and a temporary injunction was scheduled for that date.

19        The day before the temporary injunction hearing, Dores removed the case to the District

20    Court converting the state court orders to orders in the District Court under 28 U.S.C § 1450.

21        At the hearing on the Bunnett Parties' motion for a temporary restraining order, the Travis

22    County District Court also heard and granted the Bunnett Parties' motion for limited expedited

23    discovery, ordering that Dores respond to the Bunnett Parties' document requests and

24    interrogatories within seven days and appear for a deposition within ten days. Following removal,

25    Dores refused to comply with the Travis County District Court's discovery order. Because of

26    Dores' failure to comply whatsoever, the Bunnett Parties were forced to file a motion to compel,

27    which the District Court Court granted in part and denied in part. (*See Bunnett & Co., Inc. and*

28    *Energy Feeds International, LLC v. Frank Dores*, Case No. 15-cv-1104, Dkt. Entry dated January

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO

1  12, 2016.)

2      The District Court's discovery order was the subject of further extensive motions, appeals,

3  and even a petition for writ of mandamus to attempt to block discovery from proceeding.  Copies

4  of Dores' motion, the Bunnett Parties' Response, and the 5th Circuit's Order denying Dores'

5  Petition for Writ of Mandamus are attached hereto as Exhibits E, F, and G.

6      Ultimately, Dores produced some documents after the close of business on the night

7  before the January 13, 2015 evidentiary hearing before the District Court.  At the hearing, the

8  District Court reviewed many of the documents from that production and noted that the

9  documents' contents materially contradicted Dores' prior sworn statements, raising serious issues

10  of perjury and the appearance that Dores was attempting to commit a fraud upon the court.  The

11  document production included no emails or business correspondence subsequent to November 18,

12  2015. (*See* Ex. A, Transcript of January 13, 2016 Hearing, at 121:24-123:1.)  At the conclusion

13  of the hearing, Dores consented to entry of a second Temporary Restraining Order and agreed to

14  be deposed by the Bunnett Parties prior to the hearing.  (*Id.* at 174:23-175:22; 184:1-7.)  The

15  second Temporary Restraining Order dated January 13, 2016, is attached hereto as Exhibit H.

16      Dores' affidavit that the District Court believed constituted a fraud on the court is

17  substantively identical to the affidavit Dores attached to his Motion.  (*Compare* Dores District

18  Court Affidavit, attached hereto as Exhibit I, ¶¶ 1-14, *with* Dores Affidavit in support of Motion,

19  Dkt. No. 11, ¶¶ 10-24.)

20      On January 15th, the Bunnett Parties served Dores a notice of videotape deposition for

21  Tuesday, January 26, 2016.

22      On January 20th, Magistrate Judge Andrew W. Austin issued his Report and

23  Recommendation recommending that Defendant's motions to dismiss or transfer venue be

24  denied.  A copy of Judge Austin's Report and Recommendation is attached hereto as Exhibit J.

25      The Bunnett Parties' counsel made repeated efforts to confer with Dores' counsel about

26  the need to supplement Dores' document production and interrogatory answers.  Dores' counsel

27  refused to make any written representations or stipulations of any kind and refused even to

28  discuss steps that Dores had taken or would agree to take to preserve evidence.  The contents of

1    the telephone conferences between counsel are memorialized in the emails attached hereto as

2    Exhibit K.

3           On Friday, January 22, Dores emailed the Bunnett Parties to inform them that Dores' had

4    filed this bankruptcy case and would not appear for his deposition scheduled on January 26th.

5    (*See* E-mail Correspondence 1/21/16-1/22/16, attached hereto as Exhibit L.) Dores asserted that

6    the automatic stay applied to stay all proceedings in the District Court.

7           Given the urgency of the relief they were seeking, on January 25, 2016, the Bunnett

8    Parties filed their emergency motion (the "Emergency Motion") in the District Court seeking a

9    declaration that the automatic stay did not apply to their efforts to obtain a preliminary injunction

10   against Dores and compelling Dores to appear for his deposition. (*See* Emergency Motion,

11   attached hereto as Exhibit M.) Dores filed his response on January 27, 2016, and the Bunnett

12   Parties filed their reply on February 3, 2016. (See Response, attached hereto as Exhibit N and

13   Reply, attached hereto as Exhibit O.) The District Court has not yet ruled on the Emergency

14   Motion.

15                              **ARGUMENT AND AUTHORITIES**

16   **I.      THE AUTOMATIC STAY DOES NOT APPLY**

17          Generally, the filing of a bankruptcy petition operates as a stay of the commencement and

18   continuation of litigation against the debtor. 11 U.S.C. § 362(a). However, the stay does not

19   apply to all litigation and was not intended to protect a debtor's tortious conduct. *Dominic's Rest.*

20   *of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir.2012) (default judgment affirmed and

21   injunction issued for trademark infringement and trademark dilution despite defendant's pending

22   bankruptcy); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1365 (Fed. Cir. 1999) ("As

23   for any tort, [debtor's] bankruptcy does not protect it from liability for ongoing violations of the

24   injunction"); *Am. Auto. Ass'n, Inc. v. Lodge*, No. 1:12-CV-0854 LJO-BAM, 2012 WL 6608600,

25   at *2-4 (E.D. Cal. Dec. 18, 2012) (automatic stay did not apply where its application would

26   enable debtor to continue to commit the tort of trademark infringement); *In re Cinnabar 2000*

27   *Haircutters, Inc.*, 20 B.R. 575, 577 (Bankr.S.D.N.Y.1982) ("the bankruptcy laws should not be a

28   haven for contumacious conduct in violation of a party's judicially-determined tradename rights

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO

- 9 -

which will be diluted by a continuation of such conduct behind the shield of the automatic stay").

As Magistrate Judge McAuliffe of the United States District Court for the Eastern District of California has explained:

> One of the overriding purposes of the Bankruptcy Code is to provide debtors with breathing room from their creditors to increase the chances of a successful reorganization. . . . Thus, the Bankruptcy Code provides for a stay of other proceedings under certain circumstances. In staying other proceedings, the primary goal of the Bankruptcy Code is to protect interests in a debtor's property and to shield the estate from direct action taken by creditors against a debtor's real or personal property. . . . The bankruptcy stay does not apply automatically to an act or proceeding that does not affect the property of the debtor's estate. . . . Further, automatic bankruptcy stay protection does not protect the tortious use of a debtor's property by the debtor.

> Because this matter involves Defendant's use of its property to commit a tort, specifically the tort of trademark and service mark infringement, application of the automatic stay would permit Defendant to continue to commit this tort. Defendant's alleged commission of a tort is not protected by the Bankruptcy Code.

*Am. Auto. Ass'n, Inc.*, 2012 WL 6608600, at *3-*4 (citations omitted).

*Dominic's Restaurant* is illustrative of these well-established principles. In that case, the plaintiff obtained several temporary restraining orders and a preliminary injunction against a defendant who had been using the plaintiff's tradename. After the bankruptcy filing, the defendant continued to use the debtor's tradename, in violation of the injunction, and the plaintiff moved for contempt. The defendant argued that the plaintiff's tort action and the ensuing contempt claim were both stayed by his bankruptcy filing. The Sixth Circuit disagreed, holding that the automatic stay did not apply to where its application would permit the debtor to commit a tort. The court reasoned that the intent of the automatic stay is to prevent interference with the orderly disposition of the property of the estate, not to preclude post-petition suits to enjoin unlawful behavior. *Dominic's Rest. Of Dayton, Inc.*, 683 F.3d at 760-61. As the court obvserved, "If [the stay] were read to prevent the injunctive relief against mark infringement sought here, bankrupt businesses which operated post-petition could violate plaintiffs rights with impuity." *Id.* (quoting *Larami Ltd. V. Yes! Entm't Corp.*, 244 B.R. 56, 60 (D.N.J. 2000)).

As in the *American Auto Association*, *Dominic's Rest. of Dayton, Inc.*, and *Cinnabar 2000 Haircutters, Inc.*, cases cited above, Dores is unlawfully using the Bunnett Parties' intellectual

property (here, their trade secrets) to steal the Bunnett Parties' customers and unlawfully compete with their business in violation of his fiduciary duties and the Uniform Trade Secrets Act. This Court should not sanction Dores' use of the bankruptcy process and the automatic stay to shield his unlawful behavior while the Bunnett Parties' business continues to suffer. Accordingly, it should enter an order clarifying that the automatic stay does not apply to the Injunction Proceedings.

## II.    ALTERNATIVELY, THE STAY SHOULD BE LIFTED

Alternatively, the stay should be lifted for the limited purpose of allowing the Preliminary Injunction Proceedings to continue.[2]

Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay for cause. 11 U.S.C. § 362(d)(1). "Cause" is not defined under the Bankruptcy Code, but rather is determined on a case-by-case basis. *In re Sunland, Inc.*, 508 B.R. 739, 744 (Bankr. D.N.M. 2014).

In determining whether to lift the stay to allow litigation against the debtor to proceed in a non-bankruptcy forum, bankruptcy courts should consider the effect of stay relief upon a debtor's reorganization efforts and resources, conservation of judicial resources, and prejudice to both the movant and other creditors. To that end, courts generally consider the following factors, first enumerated in *In re Curtis* (the "*Curtis* Factors"):

(1)    Whether the relief would result in a partial or complete resolution of the issues;

(2)    the lack of any connection or interference with the bankruptcy case;

(3)    whether the foreign proceeding involves the debtor as a fiduciary;

(4)    whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;

(5)    whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

---

[2] Pursuant to Local Rule 4001-01, attached hereto as Exhibit P is the completed Form EDC 4-468, Relief From Stay Summary Sheet.

(6)    whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7)    whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

(8)    whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

(9)    whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

(10)   the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)   whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)   the impact of the stay on the parties and the 'balance of the hurt.'

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). "The Ninth Circuit has recognized that 'the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum.'" *In re Roger*, 539 B.R. 837, 845 (C.D. Cal. 2015) (quoting *In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009)). Not all of the *Curtis* factors are relevant in every case, and the Court is not required to give them equal weight. *Id.*

Most, if not all, of the relevant *Curtis* factors favor lifting the automatic stay to allow the Bunnett Parties to proceed with the Injunction Proceeding. First, allowing the Injunction Proceedings to continue will lead to a full resolution of the Bunnett Parties' claims against Dores, and, in fact, is necessary to any resolution. The Injunction Proceedings will establish once and for all whether Dores is unfairly competing with the Bunnett Parties, whether he is misappropriating the Bunnett Parties' intellectual property, and will stop any tortious conduct.

Second, the Injunction Proceedings will not interfere with this Chapter 13 proceeding in any way and will not prejudice the interests of any other creditor. Allowing the Injunction Proceedings to continue will facilitate the bankruptcy process to the great benefit of Dores' creditors because it will resolve the issue of whether or not Dores is presently working. If he is,

1  as the emails he disclosed to the Bunnett Parties in the Injunction Proceedings appear to show,

2  then the veracity of Dores' bankruptcy petition and schedules would be called into doubt.

3        The parties were preparing for a hearing on the Bunnett Parties motion for a preliminary

4  injunction that was scheduled to occur less than two weeks after Dores filed his bankruptcy

5  petition. As a result, resolution of most of the pertinent issues in the Injunction Proceedings will

6  likely come quickly after the stay is lifted.

7        Most importantly, however, the balance of harms clearly favors lifting the automatic stay.

8  The Bunnett Parties will likely suffer irreparable harm if Dores is allowed to continue to utilize

9  the automatic stay to shield his tortious, destructive conduct. As recognized by the District Court

10  in prior hearings, Dores' own emails show that he has been in discussions with the Bunnett

11  Parties' suppliers and others and intends to begin soliciting business from the Bunnett Parties'

12  customers. If Dores is allowed to continue to his present tortious conduct, he may cause

13  irreparable damages to the Bunnett Parties' business. Such conduct should not be sanctioned.

14        Dores, on the other hand, suffers no cognizable harm if the Injunction Proceedings are

15  allowed to continue. Dores claims, both as the basis of his defense in the Injunction Proceedings

16  and in support of his bankruptcy petition, that he is unable to work until at least May 2016. If that

17  is true, then an injunction would not impose any material burden on him and would not in any

18  way affect the assets of his bankruptcy case. If, however, Dores' purported inability to work is a

19  mere rouse to conceal tortious and unfair competitive business activities, as the evidence obtained

20  by the Bunnett Parties suggests, then Dores' only "harm" would be that he can no longer continue

21  his tortious behavior without risking criminal consequences. That is not a harm that the

22  automatic stay was designed to protect. Dores certainly has no right to engage in tortious and

23  unfair competitive business activities. He should not allowed to utilize the automatic stay to

24  shield his conduct from scrutiny. Accordingly, the automatic stay should be lifted for the limited

25  purpose of allowing the Injunction Proceedings to continue.

26                     **Waiver of 14-Day Stay Under Bankruptcy Rule 4001(a)(3)**

27        The Bunnett Parties requests a waiver of the fourteen-day stay imposed under Rule

28  4001(a)(3) of the Federal Rules of Bankruptcy Procedure. This request is based upon the urgency

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO

of the relief that they seek and the possibility that Dores is continuing to solicit the Bunnett

Parties' suppliers and customers and misappropriate the Bunnett Parties intellectual property..

WHEREFORE, the Bunnett Parties respectfully requests that this Court enter an order

(i) clarifying that the automatic stay pursuant to 11 U.S.C. § 362(a) does not apply to the Bunnett

Parties' preliminary injunction proceedings against Dores, (ii) requiring that Dores produce all

documents and communications concerning his business and commercial activities of any kind

since his resignation from employment with the Bunnett Parties within seven days, as well as sit

for a deposition under oath within ten days; and (iii) granting such other and further relief as this

Court deems fair and equitable.

Dated: February 9, 2016                         Schiff Hardin LLP


By:  /s/Andrew M. Minear
     Andrew M. Minear, No. 27817
     666 Fifth Avenue, Suite 1700
     New York, NY 10103
     Telephone:     212.745.9538
     Facsimile:     212.753.5044
     Email:   aminear@schiffhardin.com

     And

     Matthew F. Prewitt (pro hac pending)
     233 South Wacker Drive
     Suite 6600
     Chicago, IL 60606
     Telephone:     312.258.5500
     Facsimile:     312.258.5600
     Email:   mprewitt@schiffhardin.com


     *Attorneys for Creditors Bunnett & Co.,
     Inc. and Energy Feeds International, LLC*

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO