Schiff Hardin LLP
Andrew M. Minear, No. 27817
666 Fifth Avenue, Suite 1700
New York, NY 10103
Telephone: 212.745.9538
Facsimile: 212.753.5044
Email: aminear@schiffhardin.com

and

Matthew F. Prewitt (admitted *pro hac vice*)
Michael K. Molzberger (admitted *pro hac vice*)
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
Telephone: 312.258.5500
Facsimile: 312.258.5600
Email: mprewitt@schiffhardin.com
mmolzberger@schiffhardin.com

*Attorneys for Creditors Bunnett & Co., Inc. and Energy Feeds International, LLC*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO

| | |
|---|---|
| In re:<br><br>FRANK MIRANDA DORES and<br>MARY ANNE SOUZA DORES,<br><br>Debtors. | Case No. 16-10169-B-13<br><br>Chapter 13<br><br>D.C. No.: AMM-2<br><br>Date: September 14, 2016<br>Time: 1:30 p.m.<br>Place: Dept. B, Ctrm. 13, 5th Floor<br>United States Courthouse<br>2500 Tulare St., Fresno, California<br>Judge: Hon. René Lastreto |

**BUNNETT & CO., INC. AND ENERGY FEEDS INTERNATIONAL, LLC'S MOTION TO DISMISS**

Creditors Bunnett & Co., Inc. and Energy Feeds International, LLC (collectively, the "Bunnett Parties"), by and through their undersigned counsel, respectfully move to dismiss the

Debtors' bankruptcy petition with prejudice pursuant to 11 U.S.C. § 1307(c) and 11 U.S.C. § 349(c) because of the Debtors extreme bad faith.

## INTRODUCTION

Discovery has revealed that the Debtors have repeatedly lied to the bankruptcy court. They lied about Mr. Dores' ability to work, his competitive work in the dairy industry, and his business income. The Debtors introduced those lies to this Court, despite the fact that the Western District of Texas admonished Mr. Dores for making the same exact statements that looked like "perjury" to that court.

In fact, the Debtors have repeatedly committed perjury to conceal the substantial business income that Mr. Dores was receiving at the same time he claimed disability. The Debtors gave false declarations and false deposition testimony in multiple court proceedings over the entire period of his claimed disability in order to conceal his business activities and the income resulting from those activities. Indeed, the Dores lied about their substantial business income to this Court.

Discovery has revealed that the Debtors participated in an elaborate scheme to conceal payments to Mr. Dores by one of the Bunnett Parties' former suppliers, Wawasan Agrolipids SDN BHD ("Wawasan") and its American agent Agrofin, Inc. ("Agrofin"), who is now a direct competitor of the Bunnett Parties. Mr. Dores, fearful of a lawsuit, attempted to hide his work on behalf of Wawasan, but the documents show that the Dores received at least $60,000 in unexplained payments from Wawasan between November 2015 and May 2016. These payments were made in violation of a temporary restraining order entered against Mr. Dores immediately prior to the commencement of this bankruptcy case, were continued during this bankruptcy case, were never disclosed by the Debtors in this bankruptcy case, and were deliberately structured for the express purpose of concealing the payments from the Debtors' creditors.

Even after the Bunnett Parties' lawyers demanded an explanation for the payments, the Dores submitted sworn declarations in which they suggest Mr. Dores had no role in arranging the payments, provided no professional services in exchange for these payments, and never benefited from the payments. However, their friends and family have admitted in depositions that Mr. Dores contacted them before they received the payments and asked them to help him by accepting the payments on his behalf. Document discovery has also revealed that Mr. Dores gave instructions to Wawasan's agents and provided the names and addresses of the persons who had agreed to accept the funds on his behalf.

The Debtors bankruptcy petition should be dismissed with prejudice because of their bad faith and egregious behavior. The Debtors misrepresented facts in their petition, unfairly manipulated the Bankruptcy Code, and filed and executed a Chapter 13 petition and plan in an inequitable manner to defeat litigation filed by the Bunnett Parties in the Western District of Texas. Additionally, Mr. Dores has attempted to perpetrate a fraud on the court by submitting an affidavit to this Court that was very similar to the one that the District Court described as "looking very much like perjury." This type of behavior should not be tolerated by the bankruptcy court and the Debtors' case should be dismissed with prejudice.

## FACTUAL BACKGROUND

Mr. Dores is the former general manager of the Bunnett Parties. The dispute between the Bunnett Parties and Mr. Dores arises from his abrupt resignation in October 2015 and his orchestration of a scheme for the Bunnett Parties' sales representatives to resign *en masse* and enter into business directly with the Bunnett Parties' suppliers and customers, including Wawasan and its U.S. subsidiary, Agrofin, in competition with the Bunnett Parties. When he left the Bunnett Parties' employ, Mr. Dores misappropriated critical competitive information from the Bunnett Parties, leading to a lawsuit, in the Western District of Texas, and two TROs prohibiting

Mr. Dores from conducting business with any supplier or customer that he worked with during his employment with the Bunnett Parties.

Until the fall of 2015, Bunnett & Co. was the exclusive distributor of Wawasan products in the United States and had been since 2008. After Mr. Dores left the Bunnett Parties and took the Bunnett Parties' sales representatives with him, Wawasan began importing its products directly to the United States and selling them through California-based company Agrofin to the Bunnett Parties' customers. Mr. Dores, Ray Gearheart, and John Franklin (two other former Bunnett Parties sales representatives), solicited the Bunnett Parties' customers on behalf of Wawasan and assisted Wawasan to arrange its logistics for product storage and transport. *See e.g.*, Exs. E, J.

**A. The Scheme to Funnel the Debtors Money Begins Shortly After Mr. Dores Resigns form the Bunnett Parties**

Discovery has revealed that the Debtors received at least $60,000 in unexplained payments from Wawasan between November 2015 and May 2016. The Debtors have asserted that they did provided any services to Wawasan and that these payments were entirely gratuitous. Exs. G, H. The elaborate means used to conceal the payments belie their protestations of innocence.

The Debtors received their first payment from Wawasan almost immediately after Mr. Dores resigned from the Bunnett Parties in October 2015. A few weeks before he resigned, the Debtors formed a new company, FM Ag Enterprises, Inc. The fictitious name of the business is "Mary Anne Appraisal," yet it "will own and operate an Agriculture Services and Sales Business," Mr. Dores is listed as the CEO and he is the only one who will receive a regular salary from the business. Ex. L, M.A. Dores Dep Ex. 1-2. In fact, a mysterious $20,000 payment from Wawasan's affiliate to Ms. Dores was the very first revenue received by FM Ag. Ex. L, M.A. Dores Dep. 110:13-16. An entity affiliated with Wawasan, Paros Corporation PTE LTD

("Paros"),[1] FM Ag Enterprise, Inc. $19,975.00 on November 17, 2015. Ex. L, M.A. Dores Dep. 109:8-110:16. Ms. Dores testified that Paros, a company that she did not know and contacted her unexpectedly, paid her nearly $20,000 for a 9-10 page industry trend report that took her a few days to write. Ex. L, M.A. Dores Dep. 77:1-84:5. She did not retain a copy of the report. Ex, L, M. A. Dores Dep. 74:7-23, 82:9-84:9.

### B. Mr. Dores Files a Fraudulent Disability Claim To Disguise His Work for Competitors

As part of their scheme to conceal Mr. Dores' motives in resigning from the Bunnett Parties, the Dores submitted first a claim for workers' compensation and then for California disability benefits, in both instances based on the representation that Mr. Dores was suffering from debilitating work-related stress. This was an obvious sham. Mr. Dores used a law firm to help him with his benefits claim and, incredibly, used the *same* law firm to negotiate a complex business agreement for Mr. Dores to become a sales representative for the eastern United States for one of the Bunnett Parties' suppliers. Ex. M, Disability Paper Work; Ex. N, Sousa Dep. 105:14-17. In short, Mr. Dores was negotiating for a high-compensation and high-stress job that was almost exactly the same sort of work that he had done for the Bunnett Parties and that he claimed he was too ill to perform. Mr. Dores actually admitted to one his business associates that his disability claim was a mere sham that he and his attorney had devised to conceal his activities and protect him from litigation. Ex. O, Email between R. and T. Gearheart.

### C. In an Attempt to Avoid an Injunction, Mr. Dores Files a False Declaration

Based on evidence of Mr. Dores' misconduct as he was leaving the company, on November 24, 2015, the Bunnett Parties filed suit in Texas state court against Mr. Dores for breach of his fiduciary duties and theft of trade secrets. On that same day, the state court entered

---

[1] Corporate records report for Paros show that Yap Wai Joon is a director and the sole shareholder of Paros. Ex. P. He is also a significant shareholder of Wawasan. Ex. P.

a TRO prohibiting Mr. Dores and "any persons in active concert or participation with Dores" from (among other things) "[d]irectly or indirectly soliciting, either on behalf of himself or any other person, employer or entity, for the purpose of creating a contractual or other business relationship with any customer or supplier of [the Bunnett Parties] with whom Dores had contact or for whom he performed services during his employment with [the Bunnett Parties]." Ex. A.

Mr. Dores removed the Bunnett Parties' case to the Western District of Texas on December 7, 2016, the day before the state court hearing to extend the TRO. *Bunnett & Co. v. Dores*, Western District of Texas, Case No. 15-01104, Dkt. No. 1. In the time between the expiration of the first TRO, on December 8, 2016, and the entry of the second TRO by this Court on January 13, 2016, Ray Gearheart told a potential customer that he was currently in business with Mr. Dores and Mr. Franklin, that they want to sell the customer Palm products (which is what Wawasan produces), and that "[t]he three of us developed the sales for Bunnett co. and are interested in providing product to the accounts we developed and continue to expand the volume." Ex. J.

At the District Court's TRO hearing, it became evident to the Court that Mr. Dores had submitted a false declaration denying his competitive business activities and claiming instead to suffer from debilitating, work-related stress that supposedly had rendered him disabled. Regarding these assertions, Magistrate Judge Austin forcefully rebuked Mr. Dores and his counsel on the record:

> THE COURT: Well, I got to say, you know, I'm sitting up here keeping my mouth shut for a while, but you made representations to the Court on behalf of your client, Mr. Richie, and Mr. Dores, more importantly, has made sworn testimony to this Court that is looking very much like perjury.
>
> I'm looking at his affidavit where he says, "I am not involved in any business competing with the The Bunnett Parties. I have not worked since I left working for the The Bunnett Parties. I'm presently unemployed. I did not keep any documents of the company."

Schiff Hardin LLP
Attorneys At Law
Chicago

- 6 -

> These are sworn statements directly relevant to this case. They look like perjury to me. And I don't mean to select mistakes or oopses or false statements. They look like perjury.
>
> This is the same man who says he can't be here because it would be life-threatening to be here today. I'm seeing e-mails and testimony that is directly inconsistent with sworn testimony to me and to the Court about what he's doing.
>
> And I told you yesterday I was skeptical of his claims, and now I'm beyond skeptical. This man's trying to commit a fraud on the Court.
>
> MR. RICHIE: If I may respond, Judge.
>
> THE COURT: And I think you need to be very careful in what you're representing to the Court here about Mr. Dores. I understand he thinks he has the right to do what he's doing, and that's not what I'm talking about. I'm talking about what he has said factually, and I'm not happy.
>
> MR. RICHIE: He'll have to answer that for himself, Judge. All I can tell you, is that what you're getting from Mr. Golden is a story that is not accurate. For example, that Natural –
>
> THE COURT: I'm not talking about anything Mr. Golden has said. I'm talking about e-mails Mr. Dores has authored, after he left his employment with Bunnett & Co. and EFI, clearly soliciting business and doing work in this same feed business, and he has sworn under oath that he is not doing that.
>
> […]
>
> THE COURT: If that's the way he is going to interpret his activities that I'm seeing here, or if that's the way you are going to argue them, again, you are on very thin ice.

Ex. Q, January 13, 2016 Hearing Transcript at 111:18-114:9.

The District Court entered a TRO against Mr. Dores and "any persons in active concert or participation with Dores" from directly or indirectly soliciting or forming any contractual or other business relationship with any customer or supplier of the Bunnett Parties. Ex. B. The Court also restrained Mr. Dores from "discuss[ing] any business relationship" with "any customer or supplier of [the Bunnett Parties] with whom Dores had contact of [sic] for whom he performed services during his employment with [the Bunnett Parties]." Ex. B.

**C.    The Debtors Files for Bankruptcy to Evade the TRO and Discovery.**

Mr. Dores then evaded further litigation in the Western District of Texas by filing this bankruptcy petition, in support of which he submitted the very same affidavit that he had submitted to Magistrate Judge Austin, making the very same assertions about disability and being unable to work that Magistrate Judge Austin had described as perjury and a fraud on the court. Dkt. No. 11, Dores Decl. ¶ 15.

### D.  The Scheme to Funnel Money to the Debtors Continues

Discovery has revealed that the arrangements for the secret payments from Wawasan were conducted in tandem with preparation for the Dores' bankruptcy filing. Ex. R, JDH009286. At the same time that the Dores were working with their bankruptcy counsel to prepare their petition, they were also arranging secret payments in an effort to defraud the bankruptcy court, the disability system, and violate the TRO. Ex. R, JDH011952-011953.

The scheme is well documented in emails among Wawasan and Ray and Todd Gearheart. On January 11, 2016, in an email with the subject line, "Money for Frank," Ray Gearheart asked his son, Todd Gearheart if he can "push" money from "Gareth" (Wawasan) to him and he suggests having Frank's wife, Mary Ann Dores, invoice Todd to paper the transaction. Ex. R, JDH009314. In an email chain on January 13, 2016, Ray and Todd discuss how Todd will invoice Wawasan, receive $40,000 from "Wawa" (Wawasan) and then send it to people other than Mr. Dores who will then "loan Frank the money." Ex. R, JDH009312-13. Ray tells Todd that "[t]he bad part of that is Bunnetts lawers [sic] are watching [Frank's] company like hawks. You may want to send out 2-3 checks to different people that will then loan Frank the money." *Id.*

Todd's bank account records show that he received a wire transfer from Wawasan on January 26, 2016 in the amount of $20,000 and, the next day, he issued checks to Marcio Relva and Angel Hernandez for $5,000 and $15,000, respectively. Ex. S. Mr. Relva is Mr. Dores' brother-in-law and Mr. Hernandez is Mr. Dores' neighbor. Dkt. No. 143, Dores Decl. ¶ 2(b)(i),

(iv); Ex. I, Relva Dep. 8:1-14:17. Wawasan made a second wire transfer to Todd in March 2016 and Todd again cut checks – this time to Mr. Hernandez and Mr. Dores' grandmother. Ex. S.

Mr. Relva testified that Mr. Dores contacted him, told him to expect money to come to him that was for Mr. Dores. Ex. I, Relva Dep. 8:1-14:17. Mary Dores, Mr. Dores' mother, testified that Mr. Dores contracted her and told her that a check would be coming to his grandmother. Ex. T, M. Dores Dep Tr. 21:5-23:25. Mr. Hernandez testified that he received checks for Mr. Dores' benefit, he had talked to either Ray or Todd about the checks, and he would have turned the money over to Mr. Dores, if asked. Ex. U, A. Hernandez Dep. 11:5-22:13. Instead, at Ms. Dores' instruction, he got a cashier's check for the money he had received from Mr. Gearheart and gave it to Mr. Fear, the Debtors' bankruptcy attorney. *Id*. at 24:2-25.

The Debtors have confirmed these payments in a sworn declaration that he filed with this Court. Dkt. No. 143, Ex. G, H. Incredibly, they assert that they were passive participants in the scheme, neither requesting nor making any use of the funds. However, it is obvious that the Debtors actively participated in this scheme. Mr. Dores worked closely with Wawasan during his employment with the Bunnett Parties. Wawasan made the secret payments to specific trusted friends and family members of the Debtors– a neighbor and Mr. Dores' brother-in-law – who could have been known to Wawasan and the Gearhearts only if the Debtors, or someone working on his behalf, had first supplied their names and contact information. Indeed, Mary Dores and Mr. Hernandez's testimony confirms Mr. Dores' involvement.

The Debtors did not disclose these payments in their bankruptcy schedules, were not forthcoming about the payments until presented with evidence from the Bunnett Parties' attorneys, and the secret payments show that the Debtors engaged in an intentional fraud upon this Court to conceal substantial monies that the Debtors received forth their business associates during the bankruptcy case. These secret payments, along with Mr. Dores' false declaration, more

08/17/16

than justify the dismissal of the Debtors' bankruptcy and the Bunnett Parties' motion should be granted.

**ARGUMENT AND AUTHORITIES**

The Court should dismiss the Debtors' bankruptcy case with prejudice because their dishonesty has "pervaded the proceedings," the Debtors filed this litigation to avoid the Bunnett Parties litigation in the Western District of Texas, and egregious behavior is present. *See In re Leavitt*, 171 F.3d 1219, 1225 (9th Cir. 1999). The Debtors intentionally and fraudulently concealed monies from the bankruptcy court, Mr. Dores filed a perjurious declaration after being admonished by Magistrate Judge Austin, and allowing the Debtors to continue to enjoy the protections of the bankruptcy court would be inequitable to the Debtors' creditor, including the Bunnett Parties.

"Bad faith, as cause for the dismissal of a Chapter 13 petition with prejudice, involves the application of the 'totality of the circumstances' test." *In re Leavitt*, 171 F.3d at 1224. The bankruptcy court should consider the following factors:

> (1) whether the debtor 'misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner,'
>
> (2) 'the debtor's history of filings and dismissals,'
>
> (3) whether 'he debtor only intended to defeat state court litigation,' and
>
> (4) whether egregious behavior is present.

*Id.* quoting *In re Eisen*, 14 F.3d 469, 470 (9th Cir.1994),

The bankruptcy court does not have to find that the debtor had fraudulent intent to find bad faith. *Id.* And, the bankruptcy court has the power to dismiss a case with prejudice "for cause." *In re Leavitt*, 171 F.3d at 1223; 11 U.S.C. 1307(c); 11 U.S.C. § 349(a).

- 10 -

I. **THE CASE SHOULD BE DISMISSED BECAUSE DORES' DISHONESTY HAS PERVADED THE CASE**

A. **The Debtors Pre-Petition Conduct and False Declarations Show Bad Faith**

The Debtors' bankruptcy filing is just the latest in a string of falsehoods and lies. Before resigning from the Bunnett Parties or filing for bankruptcy, Mr. Dores stole a large amount of data from Bunnett Parties, he wiped his laptop hard drive, and erased the memory on his work iPad. Mr. Dores lied about retaining Bunnett Parties documents in sworn interrogatory statements.

After filing for bankruptcy, Mr. Dores lied to this Court about his ability to work in the declaration he filed in support of his bankruptcy petition. Dkt. No. 11, Dores Decl. ¶ 3, 15. Nearly immediately after Mr. Dores resigned, he contacted the president of one of the Bunnett Parties' key suppliers, and hired an attorney to negotiate a sales representative agreement with that supplier. That job is a high-stress position that would have required extensive travel around the eastern half of the United States. Yet, at the same time Mr. Dores was negotiating for a new sales job, he applied for (and received) disability benefits, again with the assistance of counsel.

Mr. Dores also lied in his bankruptcy declaration about engaging in competitive business with the Bunnett Parties. Dkt. No. 11, Dores Decl. ¶ 15. Documents produced in discovery show that Mr. Dores negotiated with the Bunnett Parties' key suppliers and competitors. The state court TRO and the threat of a federal court TRO did not deter Mr. Dores from continuing to compete with the Bunnett Parties. In early January, Ray Gearheart told a potential customer that he was currently in business with Mr. Dores and Mr. Franklin and they wanted to continue to expand the business they had developed at the Bunnett Parties.

Magistrate Judge Austin, who had only reviewed the documents the Bunnett Parties had access to in January — far more showing Mr. Dores' competitive activities have been produced since then, warned Mr. Dores at the January 2016 TRO hearing that his statements were perjurious:

> THE COURT: I'm looking at his affidavit where he says, "I am not involved in any business competing with [the Bunnett Parties]. I have not worked since I left working for the [the Bunnett Parties]. I'm presently unemployed. I did not keep any documents of the company."
>
> These are sworn statements directly relevant to this case. They look like perjury to me. And I don't mean to select mistakes or oopses or false statements. They look like perjury.
>
> [ . . . ]
>
> I'm talking about e-mails Mr. Dores has authored, after he left his employment with Bunnett & Co. and EFI, clearly soliciting business and doing work in this same feed business, and he has sworn under oath that he is not doing that.

Ex. Q.

Notwithstanding the District Court's admonishment, the Debtors filed their bankruptcy petition and introduced the same lies into this proceeding. Mr. Dores submitted a declaration that is nearly identical to the declaration the District Court strongly suggested was designed to commit a fraud upon the Court. *Compare* Dores District Court Affidavit, attached to the Minear RFS Dec. as Exhibit I, ¶¶ 1-14, *with* Dores Affidavit in support of Motion, Dkt. No. 11, ¶¶ 10-24. Mr. Dores is using the same lies in a different court, but his objective remains the same – conceal his actions and use any means necessary to prevent the Bunnett Parties from obtaining and enforcing an injunction.

Ms. Dores' bankruptcy deposition testimony about pre-petition conduct also shows a penchant for dishonesty. Prior to filing for bankruptcy, Ms. Dores received a $20,000 payment for a 9-10 page report on dairy industry trends that she prepared for a company that she claims she had never heard of before, that contacted her out of the blue, and she did not retain a copy of the report. Ms. Dores' testimony strains belief and is clearly not the entire story. It is far more likely that the Paros payment was money paid to compensate Mr. Dores for work he performed for

Paros' affiliate, Wawasan, than for an industry trend study performed by a stranger that cost $2,000 per page.

### B.　　The Debtors Post-Petition Conduct Shows Bad Faith

The Debtors' post-petition conduct further documents the bad faith that the Debtors have infused into this proceeding. The Debtors actively worked to conceal secret payments Wawasan made to their friends and neighbors for their benefit from the bankruptcy court and the Bunnett Parties. The Debtors did not disclose these payments to the bankruptcy court, nor have they volunteered to amend their petitions to reflect these payments.

Incredibly, after the Bunnett Parties confronted the Debtors with evidence of these payments, the Debtors signed sworn declarations disclaiming knowledge of the payments and asserting that neither one of them had engaged in any competitive business with the Bunnett Parties between January 1, 2016 to June 16, 2016. These declarations are demonstrably false. Mary Dores testified that Mr. Dores Mr. Dores contracted her and told her to expect the payment. Mr. Hernandez testified that he knew he would be receiving the checks, that the money was for Mr. Dores, and he would have turned the money over to Mr. Dores, if asked. Moreover, documents show that Mr. Dores was working with Ray Gearheart and Mr. Franklin in January 2016 to compete with the Bunnett Parties.

The Dores received multiple payments from Wawasan over the course of the bankruptcy case. Thus, their false representations to this Court and the creditors were not simply to conceal past misconduct; they were part of an ongoing scheme that the Dores were able to carry out only because of their false disclosures in this bankruptcy case. The Dores first concealed the payments in their bankruptcy disclosures accompanying their petition, they again concealed these continuing payments with false testimony during their Section 341 meeting of creditors, and false affidavits and deposition testimony in contested matters with the Bunnett Parties. They had

numerous opportunities to purge their fraud their fraud, but instead they double down and continue to lie about their business activities and income. *See e.g.*, Ex. L, M.A. Dores Dep. 74:7-23, 77:1-84:9, 109:8-110:16.

### C. The Debtors' Egregious Conduct Requires Dismissal

As discussed above, the Debtors' egregious conduct has pervaded this proceeding – they have lied at every stage and their bad faith is apparent. They have made material misrepresentations to this Court and have manipulated the bankruptcy protections to their strategic advantage. Even the timing of their petition is suspicious and a marker of bad faith: the Debtors filed 9 days after Mr. Dores was admonished by the Magistrate Judge Austin. *See In re Ellsworth*, 455 B.R. 904, 920 (9th Cir. BAP 2011) ("The record established that the Ellsworths filed bankruptcy on the heels of the Injunction Litigation.").[2] There is also good reason to believe that the Dores have other hidden assets. At deposition, even though Mr. Dores has supposedly suffered a dramatic drop in income and has no expectation of returning to his former high-income bracket, Ms. Dores could not identify corresponding dramatic changes in lifestyle or reduction in expenses. Ex. L, M.A. Dores Dep. 167:25-169:10

Given the District Court's harsh evaluation of Mr. Dores' veracity for the truth and the documentary evidence and testimony of third parties contradicting the Debtors' sworn statements, their falsehoods "cannot be considered to be innocent" and the egregiousness of their conduct is evident. *See In re Leavitt*, 171 F.3d at 1225. The Debtors have attempted to commit a fraud on this Court in furtherance of their plan to avoid litigation in the Western District of Texas and continue their tortious conduct towards the Bunnett Parties unchecked. Their dishonesty and

---

[2] The Dores' stated bases for petitioning for bankruptcy were outstanding and ongoing legal fees and those bases have disappeared. Ex. V, F. Dores Dep, 19:3-9. Mr. Richie, has since waived his claim to the $50,000 in outstanding legal fees Ex. V, F. Dores Dep., 19:25-20:3. Moreover, it appears likely that Dores future litigation expenses will be covered by a third party. *See* Ex. V, F. Dores Deposition Excerpts, at 16:25-17:6.

misconduct cannot be allowed to run unabated. Based on this showing of abundant bad faith, misrepresentations, and manipulation of the bankruptcy code, the Court should grant the Bunnett Parties' motion and dismiss the bankruptcy case.

## II. CAUSE EXISTS TO DISMISS THE BANKRUPTCY WITH PREJUDICE

The Debtors' extreme bad faith justifies a dismissal with prejudice. *In re Leavitt*, 171 F.3d at 1226. The Debtors have repeatedly lied to this Court and prevailed upon its protections with improper motives. Such deliberate misconduct warrants a dismissal with prejudice, meaning that the Debtors will be "precluded from ever again seeking to discharge those debts which would have been discharged had the plan been confirmed and completed." *In re Ellsworth*, 455 B.R. at 921. Dismissals with prejudice have been imposed for less serious misconduct such as failing to file schedules or attend the meeting of creditors and filing bankruptcy to avoid paying federal taxes. *In re Leavitt*, 171 F.3d at 1226. A dismissal with prejudice is appropriate here to check the Debtors abuses of the bankruptcy court.

## CONCLUSION

WHEREFORE, the Bunnett Parties respectfully requests that the Court grant its motion and dismiss the Debtors' case with prejudice. The Bunnett Parties further request such other and further relief as this Court deems fair and equitable.

| | |
|---|---|
| Dated: August 17, 2016 | Schiff Hardin LLP |
| | By: /s/Andrew M. Minear |
| | Andrew M. Minear, No. 278173 |
| | 666 Fifth Avenue, Suite 1700 |
| | New York, NY  10103 |
| | Telephone:   212.745.9538 |
| | Facsimile:    212.753.5044 |
| | Email:   aminear@schiffhardin.com |
| | |
| | and |
| | |
| | Matthew F. Prewitt (admitted *pro hac vice*) |
| | 233 South Wacker Drive |
| | Suite 6600 |
| | Chicago, IL  60606 |
| | Telephone:   312.258.5500 |
| | Facsimile:    312.258.5600 |
| | Email:   mprewitt@schiffhardin.com |
| | |
| | *Attorneys for Creditors Bunnett & Co., Inc. and Energy Feeds International, LLC* |